# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CATHERINE SPYRIDAKIS, | : | |
| Plaintiffs, | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 09-1545 |
| | : | |
| THE RIESLING GROUP, INC. d/b/a CE | : | |
| CREDITS ONLINE, | : | |
| Defendants. | : | |
| | : | |

## Memorandum

YOHN, J.                                                        October ___, 2009

Plaintiff, Catherine Spyridakis, brings this action against The Riesling Group, Inc., doing business as CE Credits Online ("CEC"), her former employer, for wrongful discharge and other claims arising out of defendant's termination of its contractual relationship with plaintiff. Plaintiff brings these counts: Count I for wrongful discharge in violation of public policy; Count II for breach of contract arising out of defendant's breach of its duty of good faith; Count III for violations of the Wage Payment and Collection Law ("WPCL"), 43 Pa. Stat. Ann. §§ 260.5, 260.10 (2009); and Count IV for breach of contract arising out of unpaid compensation for services performed.  Presently before the court is defendant's motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for relief.  For the reasons set forth below, the court will grant the motion and dismiss Counts I, II, and III and remand the action to the Philadelphia Court of Common Pleas for disposition of Count IV.

## I.      Facts and Procedural History[1]

---

[1]  The court derives this recitation of the facts from plaintiff's complaint.  As the court must, for the purposes of this motion, it presumes all alleged facts to be true.

Plaintiff worked as an online continuing education instructor for defendant, which provided on-line, professional development courses for educators.  In early 2004, plaintiff responded to defendant's on-line advertisement that sought a part-time, online teaching assistant. Following emails and discussions about the job with CEC owner and president Gail Hixon, defendant engaged plaintiff for the position in June 2004.  After a brief training, plaintiff began working in July 2004.  On August 18, 2004, plaintiff signed an Agreement and Fee Schedule with defendant outlining the parties' respective responsibilities concerning plaintiff's work.  The agreement provided that: plaintiff would work as an independent contractor; plaintiff would receive fifteen dollars per hour for her work; plaintiff agreed to defendant's pre-set guidelines concerning work, invoicing, and compensation; and either party could terminate the agreement at will.

Plaintiff alleges that defendant exercised extensive control over plaintiff's work, despite plaintiff's designation as an independent contractor.  As set forth in written policies in a teacher's manual defendant created, defendant required that all online instructors, such as plaintiff, make only "'cordial, professional, and accurate'" replies to student comments and refrain from using jargon or grammatical or spelling errors.  The manual further required that in replying to students moderators must use CEC-created rubrics and, where necessary, follow preset responses from CEC moderators.  As provided in the manual, CEC policy required plaintiff to respond to all student online comments within twenty-four hours or make alternative arrangements with a superior or face termination.  The manual also provided instructions about the procedures for replying to student comments and for logging into the CEC's online system, including requirements for taking breaks.

Plaintiff also alleges that defendant exercised control through other unwritten policies and through active supervision of her work.  Defendant required her, as training for working as an instructor, to go through training for each course plaintiff taught.  According to plaintiff, defendant asked her to participate in training for at least five different courses, but did not compensate her for training time.  Defendant enforced the requirements set forth in the manual by directing plaintiff to report to her supervisor via email every day when she completed her work.  Defendant also reminded her of the mandatory twenty-four hour requirement for instructor replies to student postings.  Periodically, plaintiff's supervisors provided explicit instructions about how plaintiff should reply to her students' on-line comments, including explaining to her students that CEC's rubrics limited her discretion in responding to their comments.  In June 2006, Hixon explained to plaintiff the importance of instructors thoroughly understanding the courses they teach so that they can provide efficient instruction.

Noticing the control defendant exercised over her work, plaintiff doubted the accuracy of her designation as an independent contractor.  In 2005, plaintiff sought advice regarding her work status from the Pennsylvania Department of Labor and Industry, Office of Unemployment Compensation Tax Services, Bureau of Employer Tax Operations ("Bureau").  Upon request from the Bureau, plaintiff completed and submitted a form regarding her employment status, along with supporting documentation, to the Bureau in July 2006.  The Bureau investigated the matter and in doing so contacted defendant's owner and president, Gail Hixon, in July or early August, 2006.[2]  On August 11, 2006, Hixon fired plaintiff over the phone.  Although plaintiff

---

[2]  Plaintiff also alleges that around August 3 or 4, 2006, a representative from the Bureau informed her that the Bureau had just inquired of CEC about plaintiff's employment status.

submitted invoices for her final two paychecks on July 31, 2006 and August 15, 2006, respectively, defendant withheld payment until February 2007, over five months later.

Soon after plaintiff's termination, the Bureau determined that she had been an employee of defendant based on plaintiff's submitted form and documentation.  As a result, plaintiff applied for and received unemployment benefits.  Defendant appealed the Bureau's decision to give unemployment benefits to plaintiff.  On November 21, 2006, the Pennsylvania Department of Labor and  Industry, Bureau of Unemployment Compensation Benefits and Allowances found plaintiff eligible for benefits as an employee who "was not free from direction or control in the performance of the job."  (Pl.'s Compl. ¶ 33 (quotation source unidentified).)  A Pennsylvania Department of Labor and Industry referee affirmed this determination and the basis for it on February 6, 2007.  On June 8, 2007, the Unemployment Compensation Board of Review ("UCBR") affirmed the referee's determination.  On April 24, 2008, however, the Commonwealth Court of Pennsylvania reversed that determination, holding that defendant did not control plaintiff as an employee and therefore plaintiff did not qualify for unemployment benefits.  On May 7, 2009, the Pennsylvania Supreme Court denied plaintiff's petition, as an intervenor, for allowance of appeal of that decision.

Following the Commonwealth Court's decision, plaintiff initiated this action in the Philadelphia Court of Common Pleas via a praecipe for writ of summons[3] on July 30, 2008 and filed her complaint on March 12, 2009.  On April 10, 2009, defendant filed a notice of removal to this court pursuant to 28 U.S.C. § 1441(a).  Defendant then filed the present motion to dismiss.

---

[3]  Under Pennsylvania Rule of Civil Procedure 1007, a plaintiff may initiate a civil action by filing a praecipe for writ of summons, after which, the plaintiff must file the complaint for the action to proceed further.

Plaintiff responded and defendant replied.

## II.    Standard of Review

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency

of a complaint.  *Johnsrud v. Carter*, 620 F.2d 29, 33 (3d Cir. 1980) (citation omitted).  "[U]nder

Rule 12(b)(6) the defendant has the burden of showing no claim has been stated."  *Kehr*

*Packages, Inc. v. Fidelcor*, 926 F.2d 1406, 1409 (3d Cir. 1991).  When evaluating a motion to

dismiss, the court must accept as true all well-pleaded allegations of fact in the plaintiff's

complaint, and any reasonable inferences that may be drawn therefrom must be viewed in the

light most favorable to the plaintiff.  *See Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d

Cir. 2008); *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996).

The complaint must contain "a short and plain statement of the claim showing that the

pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This statement must "'give the defendant

fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 555 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  In ruling

on a motion to dismiss, "[t]he issue is not whether [the claimant] will ultimately prevail but

whether the claimant is entitled to offer evidence to support the claims."  *In re Burlington Coat*

*Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997).

## III.    Discussion

Defendant moves to dismiss plaintiff's complaint on the ground that plaintiff has failed to

state any claim for which plaintiff would have a legal right to relief.  Defendant argues that due to

the preclusive effect of the Commonwealth Court's determination that plaintiff worked for

defendant as an independent contractor, plaintiff cannot bring claims for wrongful discharge and

violations of the WPCL, as these claims are available to employees, not independent contractors. Defendant further argues that plaintiff has not set forth a cognizable violation of public policy as the basis of her wrongful termination claim.  Defendant finally argues that plaintiff cannot bring a separate breach of contract claim for breach of the duty of good faith and that, assuming the court dismisses the above claims, the court lacks jurisdiction over plaintiff's remaining breach of contract claim for unpaid compensation.

Plaintiff responds that because collateral estoppel does not apply in the context of unemployment proceedings, the Commonwealth Court's decision does not have preclusive effect.  As a result, according to plaintiff, independent contractors can bring wrongful discharge claims, just as employees can, and that plaintiff's termination occurred in contravention of constitutional and statutory policies.  Finally, plaintiff contends that in terminating plaintiff in violation of public policy defendant breached its contractual duty of good faith and that the court has discretion to retain jurisdiction over the remaining breach of contract claim.

Because the issue of the preclusive effect of the Commonwealth Court's decision touches several of the parties' other disputes, the court will begin its analysis there and then address the remaining issues.

A.      **Collateral Estoppel (Issue Preclusion)**

Defendant argues that this court must afford preclusive effect to the Commonwealth Court's determination that plaintiff worked for defendant as an independent contractor, not an employee.  Plaintiff argues that under Pennsylvania law, this court can determine on its own plaintiff's status because collateral estoppel does not apply to unemployment compensation proceedings.

"Under the doctrine of issue preclusion, a determination by a court of competent jurisdiction on an issue necessary to support its judgment is conclusive in subsequent suits based on a cause of action involving a party or one in privity.  Stated broadly, issue preclusion prevents relitigation of the same issues in a later case."  *Del. River Port Auth. v. Fraternal Order of Police*, 290 F.3d 567, 572 (3d Cir. 2002) (citations and footnote omitted); *see also Commonwealth v. Holder*, 805 A.2d 499, 502 (Pa. 2002) ("The phrase 'collateral estoppel,' also known as 'issue preclusion,' simply means that when an issue of law, evidentiary fact, or ultimate fact has been determined by a valid and final judgment, that issue cannot be litigated again between the same parties in any future lawsuit." (footnote omitted)).  Under federal statute, state court judgments "shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken."  28 U.S.C.A. § 1738 (2006).  Accordingly, "federal courts must also give state administrative decisions that have been reviewed by a state court preclusive effect."  *Mclaughlin v. Fisher*, 277 F. App'x 207, 214 (3d Cir. 2008) (citing *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 466-67 (1982)).

For state judgments concerning appeals of administrative decisions, "[a] federal court looks to the law of the adjudicating state to determine [their] preclusive effect."  *Del. River Port Auth.*, 290 F.3d at 573.  Consequently, to evaluate the preclusive effect of the Commonwealth Court's determination of plaintiff's status as an independent contractor, the court must turn to state preclusion doctrine.  In adjudicating a state law issue, the court must "apply state law as interpreted by the state's highest court in an effort to predict how that court would decide the precise legal issues before us."  *Gares v. Willingboro Twp.*, 90 F.3d 720, 725 (3d Cir. 1996).  The

Pennsylvania Supreme Court has held that collateral estoppel applies if:

> (1) the issue decided in the prior case is identical to the one presented in the later action;
>
> (2) there was a final adjudication on the merits;
>
> (3) the party against whom the plea is asserted was a party or in privity with a party in the prior case;
>
> (4) the party or person privy to the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding; and
>
> (5) the determination in the prior proceeding was essential to the judgment.

*Office of Disciplinary Counsel v. Kiesewetter*, 889 A.2d 47, 50-51 (Pa. 2005). Defendant, as "the party seeking to effectuate [collateral] estoppel, has the burden of demonstrating the propriety of its application." *Chisholm v. Defense Logistics Agency*, 656 F.2d 42, 50 (3d Cir. 1981).

Here, the parties do not dispute any of the above elements of collateral estoppel, and the court finds that all are met in this case.[4]  The issue before the UCBR and the Commonwealth Court concerned whether under Pennsylvania law plaintiff met the criteria of an independent contractor or an employee.[5]  In this case, whether plaintiff has set forth a legal right to relief under Counts I and III depends on whether she qualifies as an employee of CEC, not an independent contractor.  In resolving this issue, the court would look to state law that defines an independent contractor and an employee to make a legal determination of plaintiff's employment

---

[4]  In a footnote to her brief supporting her opposition to defendant's motion to dismiss, plaintiff asserts that she does not concede the first element—identical issues—but provides no further argument in support of this assertion.  (Pl.'s Br. in Opp'n to Mot. To Dismiss Compl. ["Pl.'s Br."] 10 n.1.)

[5]  The Commonwealth Court stated that "whether an individual is an employee or an independent contractor is a determination of law subject to our review."  It then held after careful review of the evidence and arguments of counsel that plaintiff was "employed as an independent contractor, not an employee."

status.  Although the proceedings before the Commonwealth Court and this court pertain to

different claims (unemployment benefits and wrongful termination), both involve  the same

issue, requiring application of the same law to the same facts, thus satisfying the first element for

collateral estoppel.  *See Huntley v. City of Johnstown*, No. CIV. A. 03-59J, 2004 WL 627157, at

*7 (W.D. Pa. Mar. 12, 2004) (concluding that despite "differences in policy between the two

types of actions . . ., the issue is the same, the facts are the same, and the state law applied to the

facts would result in the same analysis and conclusion" and therefore collateral estoppel applies).

As the Commonwealth Court's decision constituted final adjudication of the issue of

plaintiff's employment status and plaintiff participated in that matter as an intervenor, the second

and third elements are satisfied.  Because plaintiff, through counsel, argued this issue to the

Commonwealth Court and petitioned for Pennsylvania Supreme Court review, and because those

forums provide for extensive briefing of legal issues, plaintiff had a full and fair opportunity to

litigate this issue.[6]  *See Magoni-Detwiler v. Commonwealth of Pennsylvania*, 502 F. Supp. 2d

468, 475-76 (E.D. Pa. 2007) (citing representation by counsel, extensive briefing, and petition for

Pennsylvania Supreme Court review as indicators of a full and fair opportunity to litigate).

Finally, plaintiff could not receive unemployment benefits unless the Commonwealth Court

determined that she worked as an employee; therefore, determination of her employment

status—independent contractor or employee—was essential to the judgment to award

unemployment benefits.  Because all the elements of collateral estoppel are satisfied, the court

---

[6]  The Commonwealth Court in its extensive review of the evidence submitted at the
hearings noted that the referee held two hearings, admitted over 300 pages of documents offered
by the plaintiff and heard testimony from the plaintiff, the President and CEO of the defendant
and a representative of the Department of Labor and Industry.

must afford preclusive effect to the Commonwealth Court's holding that plaintiff worked as an independent contractor, not an employee, for defendant.

Plaintiff argues that Pennsylvania law provides for a wholesale prohibition on any preclusive effect of unemployment compensation proceedings. In support of this argument, plaintiff relies almost exclusively on the Pennsylvania Supreme Court's opinion in *Rue v. K-Mart Corp*. 713 A.2d 82 (Pa. 1998). In that case, Rue received unemployment compensation following her dismissal as a K-Mart employee because the referee at her unemployment compensation hearing found that she did not steal or eat a bag of K-Mart's potato chips, as K-Mart had claimed in firing her. *Id*. at 83-84. K-Mart did not appeal. In Rue's subsequent civil action for defamation, the trial court afforded preclusive effect to the referee's factual determination that there was no theft, but the Superior Court *en banc* reversed that ruling and held that the doctrine of collateral estoppel did not apply to the factual finding of the referee. *Id*. at 84. In affirming, the Supreme Court held that although the unemployment compensation proceedings and the defamation action involved the same factual issue concerning the theft of the potato chips, K-Mart did not have a full and fair opportunity to litigate the issue before the referee. *Id*. at 86. The court based its holding on its finding that "[t]he substantial procedural and economic disparities between unemployment compensation proceedings and later civil proceedings negate the preclusive effect of a Referee's factual findings." *Id*.

In light of its review of *Rue*, the court finds not only does it not stand for the broad proposition that plaintiff attributes to it, but the case also does not even support plaintiff's position. The *Rue* court denied preclusive effect to the referee's decision entirely on the basis of K-Mart's lack of a full and fair opportunity to litigate the factual issue. *Id*. Thus, *Rue*'s holding

denies preclusive effect where the elements of collateral estoppel are not met, but says nothing to

the effect that a decision in an unemployment compensation proceeding per se can never meet

those elements.  Consequently, contrary to plaintiff's conclusion, *Rue* does not "definitive[ly]

hold[] . . . that collateral estoppel does not apply to [u]nemployment [c]ompensation

proceedings."[7]  (Pl.'s Br. 10-11.)

Turning to aspects that distinguish *Rue* from this case, while *Rue* concerned the

preclusive effect of the referee's *factual* findings, here the parties dispute the Commonwealth

Court's *legal* determination that plaintiff worked as an independent contractor.  In fact, the

Commonwealth Court noted that "[t]he essential facts are not in dispute."  *C E Credits OnLine v.*

*Unemployment Comp. Bd. of Review*, 946 A.2d 1162, 1164 (Pa. Commw. Ct. 2008).

Consequently, plaintiff cannot rely on *Rue*'s holding concerning the preclusive effect of factual

findings in an unemployment compensation proceeding to support its position that this court not

grant preclusive effect to the Commonwealth Court's legal determination.  Furthermore, the *Rue*

court made an extensive analysis of the procedures and incentives involved in an unemployment

hearing to show that K-Mart did not receive a full and fair opportunity to litigate.  *Rue*, 713 A.2d

at 86  Here, plaintiff makes no such analysis as to how the unemployment compensation

proceedings denied her a full and fair opportunity to litigate the issue of her employment status.

*See Minnick v. City of Duquesne*, 65 F. App'x 417, 423 (3d Cir. 2003) (rejecting plaintiff's

argument that he did not receive full and fair opportunity to litigate issue where plaintiff did not

---

[7]  *But see Torres v. EAFCO, Inc.*, No. CIV. A. 00-2846, 2001 WL 41135, at *3 (E.D. Pa. Jan. 17, 2001) (concluding that based on *Rue*'s holding "courts of Pennsylvania no longer apply the doctrines of preclusion in the unemployment compensation context" and denying preclusive effect to Commonwealth Court's unpublished decision that affirmed the unemployment compensation board's decision).

show how procedures prevented development of factual record).

In short, *Rue* neither provides a blanket exception to collateral estoppel to unemployment compensation proceedings nor supports plaintiff's view that collateral estoppel does not apply in this action. Because under Pennsylvania law the court must give preclusive effect to the Commonwealth Court's legal determination of plaintiff's employment status, the court cannot permit plaintiff to relitigate this issue and will apply to this case the Commonwealth Court's conclusion that plaintiff worked for defendant as an independent contractor.

### B.    Count I: Wrongful Termination in Violation of Public Policy

Plaintiff claims that defendant wrongfully terminated her in violation of public policy by cancelling her employment contract shortly after defendant learned of plaintiff's inquiry with the Bureau regarding her employment status, thus punishing plaintiff for exercising her rights of free speech and petition under the federal and Pennsylvania constitutions. In moving for dismissal of this claim, defendant argues that independent contractors cannot bring a claim for wrongful termination and even if they could, the defendant's actions against plaintiff did not violation public policy to support a claim of wrongful termination. Plaintiff argues that barring independent contractors from bringing wrongful termination claims to employees upsets the larger policies underlying such actions. Plaintiff also contends that Pennsylvania law embraces the exercise of petitioning the government to pursue unemployment compensation rights as a public policy that grounds a wrongful termination claim.

### 1.    Availability of wrongful termination claim to independent contractors

Defendant argues that because Pennsylvania law has not expressly extended wrongful termination claims to independent contractors, plaintiff cannot maintain such a claim. Plaintiff

argues that in the absence of an express prohibition of wrongful termination claims to independent contractors and the policy goals underlying these claims, the claim should be allowed.  Not only could the court find no Pennsylvania Supreme Court case concerning the availability of a wrongful discharge claim to independent contractors, but it also has no basis to predict how the Pennsylvania Supreme Court would rule on this issue.[8]  *See Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 111 (3d Cir. 2004) (finding "no Pennsylvania case [that] addresses whether there are limitations on a company's ability to terminate an independent contractor (as opposed to an employee)").  Consequently, the court will assume, without deciding, (as the Third Circuit did in *Fraser*) that an independent contractor can bring a wrongful termination claim for being fired in violation of public policy, as this assumption will not change the result of court's decision.  *See Id.*

### 2.    Whether plaintiff states a viable wrongful termination claim

Pennsylvania law applies "an extremely strong" presumption of at-will employment for "all non-contractual employment relations."  *McLaughlin v. Gastrointestinal Specialists, Inc.*, 750 A.2d 283, 287 (Pa. 2000).  For at-will employment, an employer may terminate an employee "for good reason, bad reason, or no reason at all."  *Hershberger v. Jersey Shore Steel Co.*, 575 A.2d 944, 946 (Pa. Super. Ct. 1990) (citing *Henry v. Pittsburgh & Lake Erie R.R. Co.*, 21 A. 157, 157 (Pa. 1891)).  Nevertheless, an "employer's privilege to dismiss an employee . . . may be qualified by the dictates of public policy."  *Shick v. Shirey*, 716 A.2d 1231, 1233 (Pa. 1998).  Consequently, "[a]n employee may bring a cause of action for a termination of that relationship

---

[8]  Defendant does, however, make a very strong argument that in view of Pennsylvania's reluctance to allow employees to assert wrongful discharge claims except in the narrowest of circumstances, there is little reason to extend the tort to apply to independent contractors.

only in the most limited circumstances, where the termination implicates a clear mandate of public policy." *Weaver v. Harpster*, 975 A.2d 555, 563 (Pa. 2009). The Third Circuit has observed "Pennsylvania Courts have construed the public policy exception to at will employment narrowly, lest the exception swallow the general rule." *Fraser*, 352 F. 3d at 111. Because the power to formulate public policy rests with the legislature, a court has a "sharply restricted" power "to declare pronouncements of public policy." *Id.* A court may do so "only when a given policy is so obviously for or against the public health, safety, morals or welfare that there is a virtual unanimity of opinion in regard to it." *Mamlin v. Genoe*, 17 A.2d 407, 409 (Pa. 1941).

    "To determine the public policy of the Commonwealth, [a court] examines the precedent within Pennsylvania, looking to [the Commonwealth's] Constitution, court decisions, and statutes." *Weaver*, 975 A.2d at 563. Although Pennsylvania courts have recognized "public policy exceptions to at-will employment . . . where the wrongful discharge claims have involved infringements on statutory and constitutional rights," these exceptions are "few and carefully sculpted." *Id.*[9] Courts have applied the public policy exception where "(1) an employer requires an employee to commit a crime, (2) an employer prevents an employee from performing a statutory duty, or (3) a statute prohibits discharge." *Denton v. Silver Stream Nursing & Rehab. Ctr.*, 739 A.2d 571, 577 (Pa. Super. Ct. 1999); *see also Fraser*, 352 F.3d at 111. "Where the termination has not implicated a clear mandate of public policy, [Pennsylvania appellate courts] have not permitted a common law cause of action for wrongful discharge." *Weaver*, 975 A.2d at 564.

---

    [9] Applying the exception sparingly prevents both "the exception [from] swallow[ing] the general rule," *Fraser*, 352 F.3d at 111, and erosion of "an employer's inherent right to operate its business as it chooses," *Weaver*, 975 A.2d at 563.

"Whether or not a 'public policy' should give an at-will employee a cause of action against their employer requires case-by-case analysis." *Carlson v. Cmty Ambulance Servs., Inc.*, 824 A.2d 1228, 1232 (Pa. Super. Ct. 2003).  To maintain a claim for wrongful discharge in violation of public policy, a plaintiff "in some way must allege that some public policy of this Commonwealth is implicated, undermined, or violated because of the employer's termination of the employee." *McLaughlin*, 750 A.2d at 289.  Consequently, a plaintiff may only point to violations of federal law to the extent that they embody public policy of Pennsylvania.  *Id.*  In interpreting Pennsylvania law, the Third Circuit noted that "the Superior Court has refused to extend constitutional provisions designed to restrict governmental conduct in the absence of state action." *Borse v. Piece Goods Shop, Inc.*, 963 F.2d 611, 619 (3d Cir. 1992).  Likewise, the court predicted "that if faced with the issue, the Pennsylvania Supreme Court would not look to the First and Fourth Amendments as sources of public policy when there is no state action." *Id.* at 620.

The Third Circuit applied its *Borse*'s reasoning in *Fraser v. Nationwide Mutual Insurance Co.*, a case with facts similar to the matter at hand and to which the parties cite extensively.  352 F.3d 107 (3d Cir. 2004).  There, Nationwide terminated Fraser, an independent contractor, after he wrote letters to the Pennsylvania Attorney General concerning Nationwide's "allegedly illegal conduct." *Id.* at 109.  Relying on *Borse*, the Third Circuit predicted that under Pennsylvania law a plaintiff could not maintain an action for wrongful discharge in violation of the federal and Pennsylvania constitutions under the circumstances presented.  *Id.* at 112-13.  Most importantly, the court noted that the absence of state action in Nationwide's conduct meant that plaintiff had no claim for wrongful termination in violation of public policy.  *Id.*

Like the plaintiff in *Fraser*, plaintiff here brings her claim of wrongful termination on basis of defendant's alleged violations of public policy, specifically, the right to free speech and to petition government under the U.S. and Pennsylvania constitutions. Plaintiff alleges that defendant terminated her for inquiring with the Bureau about whether defendant properly treated her employment as that of an independent contractor. Plaintiff alleges that she made this inquiry to ensure she complied with applicable tax and withholding laws. Similar to the plaintiff in *Fraser*, plaintiff here alleges that firing her for contacting a state agency concerning her employer's possible illegal conduct, defendant violated her rights under the First and Fourteenth Amendments to the U.S. Constitution and Article I, § 20 of the Pennsylvania constitution.[10] The Third Circuit concluded in *Fraser* that the public policies embedded in the First and Fourteenth Amendments of the U.S. Constitution and the Pennsylvania Constitution, the basis of plaintiff's public policy argument, are not considered sources of clear public policy for purposes of a wrongful discharge claim brought against a private employer. *Id.* Just as in *Fraser*, noticeably absent from any of these allegations by plaintiff, is any claim that defendant qualified as a state actor in its treatment of plaintiff. Given the *Fraser* court's prediction that Pennsylvania law limits claims of constitutional violations of public policy to incidents involving state actors, plaintiff cannot allege that her employer, a private actor, committed violations of public policy in terminating her contract. *See Khazzaka v. Univ. of Scranton*, No. 3:01CV211, 2001 WL 1262320, at *3 (M.D. Pa Oct. 21, 2001) (finding no violation of public policy to support wrongful termination claim because defendant was "a private actor, not a state actor" and citing

---

[10] Article I, § 20 provides: "The citizens have a right in a peaceable manner to assemble together for their common good, and to apply to those invested with the powers of government for redress of grievances or other proper purposes, by petition, address or remonstrance."

*Borse*).  Without these allegations of a violation of public policy, plaintiff's wrongful termination claim must fail as a matter of law.

Plaintiff contends that based on state cases decided before and after *Fraser*, Pennsylvania law does not "erect a categorical bar" on "relying on [c]onstitutional protections" as the public policy basis for a wrongful termination claim.  Although plaintiff points to a handful of cases that, according to plaintiff, show that Pennsylvania law embraces this expansive view of public policies that ground a claim of wrongful termination, none have the broad reach that plaintiff ascribes to them.[11]  Instead, in finding a wrongful termination based on public policy, courts in Pennsylvania have identified a specific statute or regulation that the termination threatened, not merely constitutional rights to expression or petition.  *See Paralegal v. Lawyer*, 783 F. Supp. 230, 231 (E.D. Pa. 1992) (identifying Rules of Professional Conduct for lawyers as public policy threatened by termination of employee who refused to participate in, and late disclosed, her employer's violation of rules); *cf. Hennessy v. Santiago*, 708 A.2d 1269, 1273-74 (Pa. Super. Ct. 1998) (finding employer did not wrongfully terminate employee in violation of public policy after employee assisted rape victim, who was employer's mental health patient, because employee had no clear and specific legal obligation to report rape).  More importantly, plaintiffs'

---

[11]  Plaintiff relies on two Pennsylvania Supreme Court cases: *Shick v. Shirey*, *supra*, and *Rothrock v. Rothrock Motor Sales, Inc.*, 883 A.2d 511, 517 (Pa. 2005).  Although in *Shick* the court held that a plaintiff need not point to a specific statutory provision prohibiting the alleged employer conduct, it did require that a claim of wrongful discharge have some connection to a clear statutory right. 716 A.2d 1231, 1238 (Pa. 1998) (holding that termination for filing workers' compensation claim violated public policy, specifically the right to such a claim, even though statute did not expressly prohibit termination for making claim).  The court ruled similarly in *Rothrock v. Rothrock Motor Sales, Inc.* 883 A.2d 511, 517 (Pa. 2005) (holding that defendant wrongfully terminated employee in violation of public policy where the employee refused to dissuade a subordinate from exercising his statutorily provided right to workers' compensation).

argument does nothing to address the absence of allegations of state action in the underlying constitutional basis for the wrongful termination claim.

Plaintiff also points to her statutory right to unemployment compensation as a source of public policy that grounds her wrongful termination claim. This argument fails for two reasons. First, in her complaint plaintiff did not identify her right to unemployment compensation as a public policy violated by her termination; the complaint only refers to constitutional provisions as the public policy basis for the claim. Second, when plaintiff contacted the Bureau, she did so to inquire as to her employment status, not to exercise her right to unemployment compensation. As a public policy basis for a wrongful termination claim, Pennsylvania law recognizes the infringement only on the right to seek unemployment compensation, not the seeking of information connected to that right. *See, e.g.*, *Raykovitz v. K Mart Corp.*, 665 A.2d 833, 835 (Pa. Super. Ct. 1995) (holding that employer wrongfully terminated plaintiff, a seasonal worker, in violation of public policy after plaintiff sought unemployment compensation during period where plaintiff was not working for employer). Consequently, plaintiff's termination for contacting the Bureau did not violate public policy on the basis of her statutory right to seek unemployment benefits.

Finally, plaintiff argues that her wrongful termination claim finds support in a vital public policy interest. Plaintiff points to a concern over the employer's evading federal and state labor, employment, and tax laws by classifying workers as independent contractors, but treating them as employees. (Pl.'s Br. 21-22.) Nevertheless, plaintiff has failed to identify a particular statute, or other source of public policy, that proscribes such conduct. *See Spierling v. First Am. Home Health Servs., Inc.*, 737 A.2d 1250, 1259 (Pa. Super. Ct. 1999) (Schiller, J., dissenting)

(concluding employee wrongfully terminated in violation of public policy where employee

reported Medicare fraud because "public policy in favor of eliminating and punishing Medicare .

. . fraud is evinced by federal and state codes specifically prohibiting the filing of fraudulent

claims").  Because plaintiff has not identified a clear mandate of public policy that defendant

violated in its treatment of her as an independent contractor, as opposed to an employee,

defendant did not wrongfully terminate plaintiff following her inquiry to the Bureau.

Consequently, this argument must fail.

Because plaintiff's allegations that defendant violated her federal and state constitutional

rights does not set forth a viable claim for wrongful termination on the basis of public policy, the

claim must fail.  Consequently, the court will dismiss Count I of plaintiff's complaint.

### C.    Counts II, III, and IV

Because the above conclusions regarding plaintiff's employment status and her wrongful

termination claim affect resolution of the remaining issues, the court will draw upon these

conclusions in determining whether to dismiss the remaining counts for breach of the contractual

duty of good faith, violations of the WCPL, and breach of contract.

#### 1.    Breach of Contractual Duty of Good Faith

Plaintiff claims that defendant violated its implied contractual duty of good faith when it

terminated her in retaliation for contacting the Bureau.  Defendant seeks to dismiss this claim on

the basis that Pennsylvania law does not recognize a claim for breach of the implied duty of good

faith.  Plaintiff argues that her termination in violation of public policy constitutes a breach of the

duty of good faith.

"Every contract in Pennsylvania imposes on each party a duty of good faith and fair

dealing in its performance and its enforcement." *Donahue v. Fed. Express Corp.*, 753 A.2d 238, 242 (Pa. Super. Ct. 2000). Nevertheless, a plaintiff "cannot as a matter of law maintain an action for breach of the implied duty of good faith and fair dealing, insofar as the underlying claim is for termination of an at-will employment relationship." *Id.* at 243.[12] Because plaintiff's claim for breach of the implied duty of good faith arises out of defendant's termination of plaintiff's at-will employment, plaintiff cannot maintain this claim as a matter of law. *See Natale v. Winthrop Res. Corp.*, Civ. Action No. 07-4686, 2008 WL 2758238, at *11 (E.D. Pa. July 9, 2008) (finding claim for breach of duty of good faith due to termination of at will employee "unequivocally barred under Pennsylvania law"); *Radicke v. Fenton*, No. CIV.A. 00-2346, 2001 WL 229936, at *6 (E.D. Pa. Mar. 8, 2001) ("Pennsylvania law recognizes no action for wrongful discharge based upon breach of the duty of good faith and fair dealing in an at-will employment contract.")

Plaintiff argues that termination in violation of public policy constitutes a breach of the duty of good faith. Indeed, a district court has observed that "there is no bad faith when an employer discharges an at-will employee for good reason, bad reason, or no reason at all, as long as no statute or public policy is implicated." *Green v. Bryant*, 887 F. Supp. 798, 803 (E.D. Pa. 1995). Even assuming that a wrongful discharge in violation of public policy constitutes bad faith and thus a breach of good faith, because plaintiff does not set forth a viable claim for wrongful termination for a violation of public policy, her claim for breach of the duty of good faith on that basis must fail as a matter of law. *Id.* (dismissing breach of duty of good faith claim

---

[12] Conversely, of course, "even an at-will employee may bring a cause of action for breach of the covenant of good faith and fair dealing where the employer acted in bad faith with respect to terms of the employment contract *other than those concerning termination*." *Natale*, 2008 WL 2758238, at *11 (emphasis added); *see also Somers v. Somers*, 613 A.2d 1211, 1213-14 (Pa. Super. Ct. 1992).

where plaintiff's wrongful termination in violation of public policy claim failed).  As a result, the

court will dismiss Count II of plaintiff's complaint.

### 2.    Violations of the WCPL

Plaintiff claims that defendant violated the WPCL by failing to pay her on a regularly

scheduled payday and failing to pay her within thirty or sixty days of the next regularly scheduled

payday following her termination.  Defendant moves to dismiss this claim on the basis that the

WPCL only applies to employees and thus not independent contractors such as plaintiff.  In

response, plaintiff relies on her argument that this court should not give preclusive effect to the

Commonwealth Court's determination that plaintiff worked as independent contractor.

The WPCL permits employees to collect liquidated damages "[w]here wages remain

unpaid for thirty days beyond the regularly scheduled payday," or unpaid for sixty days in certain

circumstances.  43 Pa. Stat. Ann. § 260.10.[13]  For terminated employees the statute further

provides that "the wages or compensation earned shall become due and payable not later than the

next regular payday of his employer on which such wages would otherwise be due and payable."

---

[13]   The statute provides:

> Where wages remain unpaid for thirty days beyond the regularly
> scheduled payday, or, in the case where no regularly scheduled
> payday is applicable, for sixty days beyond the filing by the employe
> of a proper claim or for sixty days beyond the date of the agreement,
> award or other act making wages payable, or where shortages in the
> wage payments made exceed five percent (5%) of the gross wages
> payable on any two regularly scheduled paydays in the same calendar
> quarter, and no good faith contest or dispute of any wage claim
> including the good faith assertion of a right of set-off or
> counter-claim exists accounting for such non-payment, the employe
> shall be entitled to claim, in addition, as liquidated damages an
> amount equal to twenty-five percent (25%) of the total amount of
> wages due, or five hundred dollars ($500), whichever is greater.

43 Pa. Stat. Ann. § 260.10.

43 Pa. Stat. Ann. § 260.5.  "[T]he statutory penalties set forth in the WPCL only apply to

'employees,'" *Morin v. Brassington*, 871 A.2d 844, 850 (Pa. Super. Ct. 2005), and independent

contractors do not qualify as employees, *id.* (relying on definition of independent contractor in

Pennsylvania Workers' Compensation Act).  *See also Lewis v. UPMC Bedford*, Civ. Action No.

3:2007-13, slip op. at 22, 2009 WL 840385, at *13 (W.D. Pa. Mar. 30, 2009) ("[U]nder the plain

language of the statute, the protection of the WPCL applies only to employees, and not to

independent contractors.").  Because this court must grant preclusive effect to the

Commonwealth Court's determination that plaintiff worked for defendant as an independent

contractor and not an employee, plaintiff cannot maintain a claim under the WPCL as a matter of

law.  Therefore, the court must dismiss Count III of plaintiff's complaint.

### 3.    Remaining Breach of Contract Claim

In Count IV, plaintiff brings a breach of contract claim on the basis of defendant's

delayed payment of her last paycheck and defendant's failure to pay plaintiff for her training

hours and other hours worked.  Defendant argues that the court does not have jurisdiction over

these claims under 28 U.S.C. § 1332 and should remand that count to the Philadelphia Court of

Common Pleas pursuant to 28 U.S.C. § 1447 (requiring remand where court no longer has

jurisdiction).  Defendant contends that the court does not have original jurisdiction as to Count

IV standing alone based on diversity of the parties, because the amount in controversy does not

exceed $75,000.  *See* 28 U.S.C. § 1332 (providing for district court's original jurisdiction over

disputes between "citizens of different States" "where the matter in controversy exceeds . . .

$75,000").

Plaintiff correctly points out that another jurisdictional statute also applies, specifically 28

U.S.C. § 1367.  Under § 1367(a), "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  Pursuant to § 1367(c)(3), however, "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction."  *See also Growth Horizons, Inc. v. Delaware County*, 983 F.2d 1277, 1284-85 (3d Cir. 1993) (embracing §1367(c)'s discretionary language).

Here, plaintiff's breach of contract claim in Count IV forms part of the same case as the other counts because all counts arise out of a common incident, plaintiff's termination.  Therefore, the court could exercise supplemental jurisdiction over Count IV.  Nevertheless, because the court will dismiss all other claims in this action which were the basis of its original diversity jurisdiction, the remaining claim will not be sufficient to meet the amount in controversy prong of diversity jurisdiction.  Consequently, the court will use its discretion to decline to exercise its discretion to assert supplemental jurisdiction over plaintiff's remaining state law claim for breach of contract in Count IV.  Accordingly, the court will remand this action to the Philadelphia Court of Common Pleas for disposition of Count IV.

**IV.     Conclusion**

Because the elements for collateral estoppel are met here, the court will grant preclusive effect to the Commonwealth Court's determination that she worked for defendant as an independent contractor and not an employee.  Her claim for wrongful discharge in violation of public policy must fail as a matter of law.  As her wrongful termination claim fails, so too does

her claim for breach of the contractual duty of good faith. Because the WPCL applies only to employees, plaintiff, as an independent contractor, cannot maintain a claim under that statute as a matter of law.  The court finds that further amendments to the complaint cannot cure the above-discussed legal deficiencies and the court will dismiss Counts I, II, and III with prejudice.  *See Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004) ("[I]f a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile.").  As this court will dismiss those claims which were the basis of its original jurisdiction, it declines to exercise its discretion to assert supplemental jurisdiction over Count IV.